RECEIVED

AUG 0 8 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
_____DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

AUG 0 8 2002

Kathryn Grevas )
PO Box 350093 )
Elmwood Park Il 60707- )
(Name of the plaintiff or plaintiffs) 6393 )
v. )
)
clerk) )
Loyola University )
2160 S. First Avenue )
Maywood, Il. 60153 )
(Name of the defendant or defendants) )

## 02C 5623

CIVIL ACTION

JUDGE ZAGEL

NO._____
(Case number will be supplied by the assignment

MAGISTRATE JUDGE BOBRICK

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is **Kathryn Grevas** of the county of **Cook** in the state of **Illinois**.

3. The defendant is **Loyola University**, who resides at (street address) **2160 S. First Avenue** (city) **Maywood** (county) **Cook** (state) **Il** (ZIP) **60153** (Defendant's telephone number) **708-216-9000**

4) The plaintiff sought employment or was employed by the defendant at

(street address) 2160 S. First Avenue

(city) Maywood (county) Cook (state) IL (ZIP code) 60153

5. The plaintiff [check one box]

(a) ☐    was denied employment by the defendant.

(b) ☐    was hired and is still employed by the defendant.

(c) ☒    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) 8 , (day) , (year) 1995. thru 10/96 and again 1997 + 1998

7. (a) The plaintiff [check one box] ☐ *has not* ☒ *has* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

(I)    ☒ the United States Equal Employment Opportunity Commission on or about

(month) March (day) (year) 98 .

(ii)    ☒ the Illinois Department of Human Rights on or about

(month) March (day) (year) 98 .

} Cross filed

(b)    If charges *were* filed with an agency indicated above, a copy of the charge is

attached.    ☒ YES    ☐ NO

It is the policy of both the Equal Employment Opportunity Commission and the Illinois
Department of Human Rights to cross-file with the other agency all charges received. The
plaintiff has no reason to believe that this policy was not followed in this case.

*(Guide to Civil Cases for Litigants Without Lawyers: Page 31)*

8. (a) ☐    the United States Equal Employment Opportunity Commission has not issued a

*Notice of Right to Sue.*

(b) ☒    the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue*, which was received by the plaintiff on

(month) JUNE (day) 26 (year) 2001 a copy of which *Notice*

is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that
apply]

(a) ☒   Age (Age Discrimination Employment Act).

(b) ☐   Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☒   Disability (Americans with Disabilities Act)

(d) ☐   National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐   Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐   Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒   Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on

the basis of race, color, or national origin (42 U.S.C. §1983).    ☐ YES    ☒ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims
by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42
U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

(a) ☐    failed to hire the plaintiff.

(b) ☐    terminated the plaintiff's employment.

(c) ☐    failed to promote the plaintiff.

(d) ☐    failed to reasonably accommodate the plaintiff's religion.

(e) ☒    failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒    other

(specify): FAILED TO WORK WITH THE PLAINTIFF AS THEY HAD DONE WITH OTHER DISPLACED EMPLOYEES TO BE RE-IMPLOYED IN ANOTHER LOYOLA DEPARTMENT AS AGREED TO DO IN THE WORK FORCE REDUCTION POLICY. FAILED TO PROVIDE SENSITIVY OR SUPPORT TO THE PLAINTIFF DURING INVESTIGATION. FAILED TO ACT MORALLY, ETHICALLY OR PROFESSIONAL.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

ON OR AROUND MARCH 1996, I REPORTED MY SUPERVISOR, KAREN LEE WILLIAMS, FOR INAPPROPRIATE

AND UNPROFESSIONAL behavior - SEXUAL HARASSMENT. April 1996, defendant REDUCED my position to 3 days/week, made up work performance issues on 6/4/96 & WROTE-up plaintiff, FORCED her to go into FLOAT POOL AND THEN INTO RESIGNING FROM Loyola — THEN Attempted to turn things AROUND AND ACCUSED plaintiff OF HARASSMENT.

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully

discriminated against the plaintiff. YES

15. The plaintiff demands that the case be tried by a jury. ☐ YES ☒ NO CASE HAS BEEN going on too LONG - should have ALREADY BEEN SETTLED

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) ☐ Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): Admit their illegal AND Activity towards plaintiff, Apologize to plaintiff FOR the PAIN AND SUFFERING

She was forced into enduring during her employment, for their act of vindictiveness in providing confidential information to (Elmhurst Memorial) next employer, + the next two employers Advocate Healthcare and Village of Oak Park - all of whom have black-balled the plaintiff for exercising her legal/civil Rights.

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature) _Kathryn Grevas_

(Plaintiff's name) _Kathryn Grevas_

(Plaintiff's street address)

P.O. Box 350093  Elmwood Park, IL.

(City) Elmwood Park (State) IL (ZIP) 60707

(Plaintiff's telephone number) 708-212-8846

**EMPLOYMENT DISCRIMINATION CASE**
**2ND CIVIL ACTION**

| | |
|---|---|
| **KATHRYN M. GREVAS** ) | **United States District Court** |
| **Plaintiff** ) | **Northern District of Illinois** |
| ) | |
| **v.** ) | **Refiling of 98-CV-90078** |
| ) | **Previously Dismissed by** |
| **LOYOLA UNIVERSITY MEDICAL CENTER** ) | **Honorable Judge Zagel** |
| **Defendant** ) | **and the United States** |
| ) | **Court of Appeals for the** |
| ) | **Seventh Circuit** |

**COMPLAINT**

Plaintiff, Kathryn M. Grevas, Pro-Se, filed Charge #1998-CV-90078 against Loyola University Medical Center with the Illinois Department of Human Rights because Loyola violated my civil rights in allowing my former supervisor, Karen Lee Williams, to sexually harass me, inflict emotional abuse, and then retaliate against me for having reported her. Upon reporting Karen Lee Williams, Loyola retaliated against me by reducing my position of Senior Secretary in Graduate Medical Education from full-time five days (40 hours) per week to part-time three days (24 hours) per week in an effort to force me to resign. In addition, Karen Lee Williams retaliated and gave me a poor evaluation and wrote me up June 1996 in an attempt to prevent me from being hired/transferred to another full-time position within other departments at Loyola. When the pressure of the situation became too stressful and emotionally overwhelming, I opted to resign and remove myself from the situation. I did not receive the support I needed from Loyola's Human Resource Department or Administrative Staff.

Karen Lee Williams or someone from Loyola was then vindictive and gave information to my next employer (Elmhurst Memorial Hospital), who treated me just as

Loyola had done...like a mental patient (Their Employee Assistance Manager referred me to see a psychiatrist because I had been so damaged by what Karen Lee Williams had been doing – see attached copy). As a result, my Dysthymia (Depression with Anxiety/Panic Attacks, diagnosed in 1996)), turned into a full-blown major depression that required hospitalization in 1999 and 2001, anti-depressants (previously Celexa & Xanax – currently Zoloft 100mg/day) and counseling. My first filing of this case in federal lawsuit was improperly handled by my previous attorney, Thomas B. Campagna and second attorney Timothy J. Coffey and was subsequently dismissed. I am now refilling and asking that this case be re-opened, as Loyola and it's Credit Union have since been **harassing me** and sending me information pertaining to their insurance (see copies attached). I have not been a member of Loyola's Credit Union since my departure in 1996.

### RELEVANT BACKGROUND

I had a valid and meritorious case against Loyola University Medical Center. The failure for my appearance on April 12, 2000 was due to Attorney Thomas B. Campagna's failure to file the appropriate appearance on my behalf, as he had told me he would do in our verbal agreement. I had also telephoned and spoke with Judge Zagel's secretary, Anne Wolfe, on Tuesday, April 13, 2001, informed her that my attorney had not filed his appearance and that I was unable to attend. I asked Anne to reschedule. Anne informed me that she would cancel my case for April 12, reschedule and send me a notification with the new rescheduled date and time. Anne did not follow through as she had stated and much to my surprise, I received a notice indicating my case was dismissed due to failure of non-appearance by Thomas Campagna or myself. Upon dismissal, I filed my

Request for Review dated April 26 (see copy attached). I failed to appear on April 12 because I was still recuperating from a series of two accidents and a severe reaction to my pain medications, which I did present evidence of to Donald Walker and Judge Zagel on May 4, 2000.

My Request to Review was approved and I appeared in Judge Zagel's chambers on May 4, 2000 at 10:15 AM as instructed. Loyola's attorney, Richard F. Nelson was present, however, denied having received my Request for Review, which was mailed to him via certified mail on April 26 (see copy attached). Judge Zagel asked me if I had the receipt with me and I informed him that I did not. Judge Zagel then told me that he was interested in hearing what I had to say and would reinstate the case. Judge Zagel then informed me that I should return to his chambers on May 10, 2000 at 10:15 AM to present evidence that I did mail my request to Richard F. Nelson. As instructed I did appeared on May 10 with the requested evidence, which Mr. Nelson had refused and/or failed to pick-up (see copy attached). I also presented evidence to Donald Walker, Judge Zagel's Assistant, and Judge Zagel of my continuing problems with my ankle. The evidence was reviewed with Mr. Nelson present. Upon reviewing all evidence, Judge Zagel informed both Mr. Nelson and myself that he was reinstating the case and asked us to return on June 27, 2000 at 10:00 AM. Mr. Nelson asked for 10:30AM and Judge Zagel repeated 10:00 AM. I apparently wrote down 10:30 AM and forgot to correct before leaving the chambers.

While in traffic in route to Judge Zagel's chambers on June 27, I telephoned and spoke with Anne Wolfe and informed her that I was tied up in heavy traffic and running late. Anne informed me that session had begun at 10:00 AM, however, would relay my

message to Donald Walker and ask that Richard F. Nelson be detained until I arrived. When I arrived at Judge Zagel's chambers, my case had already been called and Loyola's attorney had already left. Donald Walker then informed me that I could file a second request for reconsideration to reinstate. As informed, I filed a second request for reconsideration dated June 28, 2000 (see copy attached).

Several months went by and I did not receive a response to my second request. I then filed a third request for reconsideration dated March 23, 2001 (see copy attached). My request was denied for the reasons stated in the minute order of March 27, 2001. Upon receipt of this notice, I contacted several departments and individuals, which gave me a different court and address to appeal Judge Zagel's minute order. Finally, I was recently told that I needed to file my Request for Appeal of Judge Zagel's Minute Order of March 27, 2001 to the Pro-Se Division of the Clerk's Office of the United States District Court, Northern District of Illinois.

I did suffer a series of accidents (severe fracture of left ankle, metal plate inserted to repair) on February 8, 2000 - re-injury of the same ankle while a passenger in the back seat of an automobile that collided with another automobile on March 13, 2000 – and a severe reaction to my pain medications on April 6, 2000, which resulted in a visit to the Emergency Room. In addition, I was suffering from extreme physical exhaustion, depression and anxiety/panic attacks. I was forced to take time off from my new position to recuperate. Given the stress of three major traumas so close together, depression and caring for my ill mother, I did loose track of time. Medical evidence of my continuing emotional/mental disability of Depression is attached for your review. (see copies attached).

4

Loyola University Medical Center violated my legal right to work in a non-hostile work environment when they allowed my then supervisor, Karen Lee Williams, to remain in a position as overseer and emotional and physically abuse my personal being with her inappropriate, unprofessional and unwanted behavior. When Loyola's recruiters and Sherron Glenn failed to place me in another full-time permanent position as promised, I was forced into leaving Loyola. Loyola then gave information to my next employer, Elmhurst Memorial Hospital and they treated me as a paranoid mental patient, which I have been told, I began to act like. Elmhurst Memorial Hospital made up work performance issues and terminated my employment on April 28, 1998, upon learning of my complaint of discrimination filed with the Department of Human Rights against Loyola. There was no way Elmhurst Memorial Hospital could have known about the mistreatment inflicted upon me by my previous supervisor, unless of course, Loyola had informed them. Upon termination with this employer, Loyola and Elmhurst Memorial Hospital then proceeded to blackball me with my next employer, who blackballed me with the next employer, Advocate Health Care, who then black-balled me to the next employer, Village of Oak Park. As a result, I was terminated from the Village of Oak Park on April 6, 2001 and was working as a sales associate making a mere $6 per hour, until I was laid-off on July 16 due to the store being slow and poor economy. I was also evicted from my apartment on Wednesday, July 3.

Loyola and their attorney apparently managed to manipulate my previous attorney Thomas B. Campagna (just as they had done with Elmhurst Memorial Hospital, Advocate Health Care and the Village of Oak Park), and frightened Thomas B. Campagna from proceeding to represent me in Federal Court. My career has been greatly damaged by

Loyola, as well as, my good name and reputation. I was not harassing Loyola, Karen Lee Williams, Dorothy Jambrosik or Sherron Glenn when I attempted to be re-employed with Loyola... that was just a direct act of retaliation by Loyola to try and discredit me or intimidate me from proceeding with my lawsuit. Loyola advertises themselves as an institution that treats the human spirit. My spirit was not treated well at all. In fact, my spirit and desire to live were taken away from me. If it had not been for the support of my mother and good friends, I probably would be dead today.

While I acknowledge and accept ownership of my neglect in this case, Thomas B. Campagna, Richard F. Nelson, Anne Wolfe, Donald Walker, and Loyola University Medical Center, and Timothy J. Coffey are equally to blame, as I was greatly misinformed by all. I should not be penalized, nor should I have to sue Thomas B. Campagna or Timothy J. Coffey for the poor execution of this case. I already paid my $150 fee (see receipt copy attached), paid Timothy J. Coffey $100 to review and attempt to settle this case, and relied upon the system to handle properly, which they did not.

## CONCLUSION

Karen Lee Williams behavior was unwelcome, offensive and made me feel uncomfortable, embarrassed, intimidated, insulted, angry and abused. My privacy, dignity, self-esteem, confidence in my work, ability to concentrate, and peace of mind suffered. It also made a condition where my employment interfered with my ability to do my job and created a hostile, intimidating work environment for me. Karen Lee Williams may not have intended to act in such a way, intended to offer or intimidate, however, I did not like it and chose to report it. Karen Lee Williams behavior affected

6

my physical and emotional health and interfered with my ability to perform my job successfully. When I objected, I was given a not-so-favorable performance appraisal (see copy attached), denied a promotion to Administrative Assistant, denied re-employment full-time permanent in another Loyola Department, forced into resigning, and then blackballed to my subsequent employers. I have been unfairly labeled.

I blew the whistle on Karen Lee Williams for sexual harassment (violating my personal being), falsifying her timecard, playing Solitaire during work hours. I also reported Dorothy Jambrosik for assisting Karen Lee Williams in her behavior and sick cruel mind games towards myself. Karen Lee Williams behavior was determined to be founded, because Loyola implemented corrective actions on Karen Lee Williams by giving her a written warning, placing her on a three (3) month probation, took away her Solitaire and other computer games, and placed Jean Holewa in a position of authority to oversee Karen Lee Williams while I was still an employee in the Graduate Medical Education Department. I was eventually forced to resign for reporting the illegal activity, and blackballed by my subsequent employers for exercising my legal rights by filing a complaint with the Illinois Department of Human Rights. I have often heard that exercising such legal right does not follow you, but it does, did and still docs.

In summary, I did nothing illegal or wrong, and did not deserve to be treated in such a manner. Nor did I deserve to be denied re-employment under the Work Force Reduction Policy, lied on by Dorothy Jambrosik or accused of reverse harassment by Karen Lee Williams, Dorothy Jambrosik, and Sherron Glenn as Loyola did. Karen Lee Williams and Dorothy Jambrosik were bullies, and their bullying affected my health (see copy of article attached, which explains the effects of bullying.)

I, the Plaintiff, am asking that you re-open this case (as I was not previously advised or informed of my legal right to re-file), and ask that you allow my I.F.P. to proceed with this matter and or settle for a reasonable amount as suggested previously by Timothy J. Coffey of $15,000, or that the Court determine the proper settlement in this case. Otherwise, I cannot move forward with my life or career until these emotional issues and scars of the past at Loyola are resolved, and I be compensated adequately for the emotional pain and suffering I was forced into enduring, which still affects me to this date.

Respectfully submitted,

Kathryn M. Grevas
Plaintiff-Appellant

By: _Kathryn Grevas_
Kathryn M. Grevas, Pro-Se

## CERTIFICATE OF SERVICE

The undersigned, Pro-Se (not an attorney), certifies that a copy of the foregoing Complaint was served upon the Defendant, Loyola University Medical Center, by depositing the same in the United States Mail, with sufficient first-class postage on Thursday, August 8, 2002.

_Kathryn Grevas_
Kathryn M. Grevas, Pro Se

Wed Oct 27 10:15:21 1999

UNITED STATES DISTRICT COURT

CHICAGO , IL

Receipt No.   106 1977
Cashier       davidj

M.O. Number:  282147

DO Code    Div No
4624        1

| Sub Acct | Type | Tender | Amount |
|----------|------|--------|--------|
| 1:510000 | N    | 3      | 90.00  |
| 2:086900 | N    | 3      | 60.00  |

Total Amount      $   150.00

NEW CASE   99CV7008  KATHRYN GREVAS

53655  10/26/99

**MONEY ORDER**

No. 282147

10/23/99

$ **$150.00**

CORUS BANK
CHICAGO, ILLINOIS

7300 WEST GRAND AVENUE-ELMWOOD PARK, IL 60707
PHONE: (708) 453-7234

REMITTER Kathy M. Grevas

PAY TO THE
ORDER OF  Clerk US District Court

One Hundred Fifty--& 00/100 U.S. Dollars.

STATE
REGULATED

**TIMOTHY J. COFFEY**
ATTORNEY AT LAW
33 NORTH LASALLE STREET · SUITE 3300
CHICAGO, ILLINOIS 60602

FAX (312) 364-9140
TELEPHONE (312) 364-9000

June 5, 2000

Kathryn M. Grevas
7315 W. Fullerton
Elmwood Park, IL    60707

RE:   Claims Against Loyola University medical Center
      Federal Case No. 99 C 7008

Dear Mr. Grevas:

Thank you for your time in meeting with me today to discuss your present case against Loyola.

This letter will conform our agreement whereby you will leave your documents with me so that I may review them and render an opinion as to the value and merits of your case within seven (7) days.

This further confirms that you have agreed to pay me $100.00 for my time in reviewing the materials and rendering an opinion.

Lastly, this confirms that I have taken possession of your materials, and will return them in same condition at the end of my review.

Very truly yours,

Timothy J. Coffey, Esq.

TJC:map

AGREED AND APPROVED:

Kathyrn M. Grevas

Jun-25-00 11:03A NELSON LAW OFFICE          312 540 7990          P.02

## LAW OFFICE OF RICHARD F. NELSON

195 NORTH HARBOR DRIVE, SUITE 3902
CHICAGO, ILLINOIS 60601-7635
TELEPHONE (312) 540-8780
FACSIMILE (312) 540-7990

June 24, 2000

VIA FACSIMILE
(312) 364-9140
Mr. Timothy J. Coffey, Esq.
Law Offices of Timothy J. Coffey
111 W. Washington Street, Suite 1720
Chicago, Illinois  60602

   Re: Grevas v. Loyola University Medical Center
     Case No. 99 CV 07008-U.S. Dist. Ct., N.D. Ill.

Dear Mr. Coffey:

 This shall confirm your telephone conference with me of June 13, 2000, wherein you advised me that although you have not filed an attorney appearance on behalf of the plaintiff in the above-referenced case you were advancing on her behalf a $15,000 settlement demand.

 Please be advised that I relayed this settlement demand to my client and it is rejected. My client is not inclined to settle this matter and no settlement counter-offer is being advanced.

 Since it is unclear to me your status of representation of the plaintiff in this case at this time, I will assume that you are acting as her attorney in regards to this settlement demand and presume that you will communicate my client's response to the settlement demand and its settlement position to the plaintiff directly.

      Very truly yours,

      Richard F. Nelson



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE

*( Issued on request )*

| To: Kathryn Grevas<br>7315 W FULLERTON<br>ELMWOOD PARK, IL 60707<br><br>☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL*<br>*( 29 C.F.R 1601.7(a) )* | From:<br>EQUAL EMPLOYMENT OPPORTUNITY COMM.<br>Chicago District Office<br>500 W. Madison Street Suite 2800<br>Chicago, IL 60661-2511 |
|---|---|

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 21B981571 | Nola Smith, S&L Coord. | (312) 886-5973 |

( See the additional information attached to this form )

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue. It is issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission

John P. Rowe, District Director

26 July 1999
*(Date)*

Enclosure(s)

cc: LOYOLA UNIV MEDICAL CTR
2160 S FIRST AVE
MAYWOOD, IL 60153

**CHARGING PARTY COPY**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ FEPA | 1998CF2174 |
| ☒ EEOC | |

Illinois Dept. of Human Rights _____ and EEOC

*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) Kathryn Grevas | HOME TELEPHONE (Include Area Code) 708-453-3026 |
|---|---|

| STREET ADDRESS 7315 West Fullerton | CITY, STATE AND ZIP CODE Elmwood Park, Ill 60707 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Loyola University Medical Center | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include Area Code) 708-216-9000 |
|---|---|---|

| STREET ADDRESS 2160 South First Avenue | CITY, STATE AND ZIP CODE Maywood, Ill 60153 | COUNTY Cook |
|---|---|---|

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA) | LATEST (ALL) 12-97 |
|---|---|

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I.  A.  ISSUE/BASIS
    1.  FAILURE TO REHIRE ON OR ABOUT DECEMBER OF 1997 IN RETALIATION FOR HAVING COMPLAINED ABOUT SEXUAL HARASSMENT.

    B.  PRIMA FACIE ALLEGATIONS
    1.  On March 11, 1996, I complained to Patricia Moten Marshall, Associate Vice President, that my supervisor, Karen Williams was sexually harassing me.

    2.  In June of 1996, I took a work force reduction and went into Respondent's float pool which I resigned from on October 7, 1996.

    3.  I was a satisfactory employee performing the job duties of a senior secretary in a manner that was consistent with Respondent's standards. I was hired in December of 1993.

    4.  On or about December of 1997, I applied for rehire. The reason given by Mary C. Denisienko, Executive Director, Human Resources, for the failure to re-hire, was because I refused to follow instructions regarding proper procedures in the employment process.

Continued...mfp

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

OFFICIAL SEAL
SYLVIA ROSARIO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/05/00

| SIGNATURE OF COMPLAINANT | DATE 3/5/98 |
|---|---|

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 3/5/98

EEOC TEST FORM 5 (09/01/81)

Charge No. 1998CF 2174
Kathryn Grevas
Page 2

5.  The failure to re-hire me followed my complaints of
    sexual harassment, thus, raising the inference of a
    retaliatory motivation.

MFP/DAB/abm

# Bullying affects workplace productivity

## By ANITA BRUZZESE
### Gannett News Service

If you thought you left bullies behind on the schoolyard, think again. That boss who dogs your trail, criticizing your every move despite your good performance record, is a bully. And the co-worker who works to humiliate you, to demean you in front of others — nothing more than a bully.

Whether you're 9 or 49, being the target of a bully is not pleasant. And it can be downright horrible when the bullying affects your health.

"Bullying is a silent epidemic that affects one in six workers," says Gary Namie, a psychology professor at Western Washington University. "It is witnessed by nearly 80 percent of workers, who don't do anything about it.

It's a dirty little secret."

Namie heads up the Campaign against Workplace Bullying. He says studies show that some 41 percent of those who are bullied are diagnosed with depression; more than 80 percent said it keeps them from being productive because of severe anxiety, lost concentration and sleeplessness, and 31 percent of women and 21 percent of men suffer post-traumatic stress disorder.

"The targets of bullies are often people who are strong and independent and talented and believe that they can tough it out," Namie says.

"But once the bullying starts, most can only stay 16.5 months because it costs them their health."

Namie says bullies often target the most talented in the workplace because "the dolts don't threaten anybody." That means if companies fail to stop bullying, they will be faced with a talent drain, decreased productivity and increased healthcare costs. "Bullying in the workplace is increasing," he says. "Half of the bullies are women; bullies are often otherwise good people — church deacons or soccer moms — who have gotten cues in the workplace that they need to be aggressive. As long as we are investor-driven at work, then people are being told by top executives they don't care how they get the job done, just as long as they get it done."

Namie says once someone is the target of a bully, he or she may become a victim again and again. That's why it's important to know a few steps you can take if you become the target.

■ Stop listening to the bully's lies and verbal assaults. You did nothing wrong and don't need to feel ashamed.

■ Break through your fears for one week at least. Procrastination ensures an outcome worse than the most feared.

■ Assert your right to be treated with respect regardless of who you are and where you rank.

■ Demand it directly from the bully whenever you interact. You owe it to yourself.

■ Document the bully's misconduct. Report him/her to anyone who will listen.

---

machines often is the most severe—particularly in rural areas.

Nearly one of every six jobs for radiology techs is unfilled, according to the American Hospital Association. But in rural areas, about one in five posts is vacant.

"There are places that are working so short-handed that the technologists are tired from putting in so much overtime," said Michael Rector, president-elect of the Indiana Society of Radiologic Technologists. "You never know [...]

By 2008, another 50,000 techs will be needed in the United States in addition to the 220,000 currently on the job, according to the Bureau of Labor Statistics. While demand increases because of the nation's aging population, interest in the career is waning. The number of students taking the national certification exam has dwindled by 33 percent since 1994.

So students such as Ball State's Stroble are becoming an increasingly rare commodity—

make deadline that—or more.

That extra pay sometimes carries a price. Some temps must be willing to travel hundreds of miles away from home and live in hotels for weeks at a time.

CareerStaff Unlimited has experienced a 50 percent increase in the demand for temporary techs in the past year, said Kim Hastings, president of the agency's Indianapolis division.

Hastings' agency pays temporary techs from $21 to $60 an hour.

## Upcoming programs

■ "Latest Advances in Heart Failure Management"
October 21 at Loyola University Medical Center

For more information, call Nancy Stack at (708) 216-8502.

opment in this new post, [...] Ford will be respons [...] the fee creating new busi [...] ness relationships with [...] homebuilders and real estate [...] brokerage firms and prov [...] iding major accounts and [...] mortgage business.

■ Assurance Agency Ltd [...] has added three sales pro [...] fessionals to its insurance [...] and risk management pro [...] increase operations to expand [...] business development in [...] core industry segments.

Tom Fredrich and Jeff Friedrich, each with more than 10 years of industry experience, have recently joined Assurance Agency Property and Casualty pre-diction teams, and Donn Sangolis has joined the Employee Benefits produc-tion team.

# Chicago Sun-Times RECRUITMENT ADVERTISING

## $23/line

3 line minimum
or $16/line for 3-6 days*
or $14/line for 7-13 days*
or $12/line for 14+ days*

Run your 1" (or greater) recruitment ad on Sunday and rerun that same ad on Thursday free of charge.

All recruitment ads appear online at www.suntimes.com and www.classifiedschicago.com

*DAYS MUST BE CONSECUTIVE. RATE IS APPLIED PER LINE/PER DAY.

Ask us about our ROP add-on rate for only

$130.00

per column-inch

**Place your help wanted ad M-F 8 AM - 6 PM, Sat & Sun 9 AM to 5 PM. Call (312) 321-2914**

YOUR RECRUITMENT AD IN THE SUNDAY/THURSDAY CHICAGO SUN-TIMES WILL REACH:
• 2.2 million readers
• 1.4 exclusive to the Chicago Sun-Times
• A total circulation that exceeds 480,000

Z 306 368 108

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

Sent to
Richard F. Nelson + Assoc.

Street & Number
195 N. Harbor D., #3902

Post Office, State, & ZIP Code
Chicago, IL 60601-6780

| | | |
|---|---|---|
| Postage | $ | 0.55 |
| Certified Fee | | 1.40 |
| Special Delivery Fee | | |
| Restricted Delivery Fee | | |
| Return Receipt Showing to Whom & Date Delivered | | 1.25 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | | |
| TOTAL Postage & Fees | $ | 3.20 |

Postmark or Date
UNIT ID: 0304
CLERK: KVKFFW
Request
Reinstated $3.20 Loyola

PS Form 3800, Apr. 1995

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Richard F. Nelson & Assoc.
195 North Harbor Drive
Suite 3902
Chicago, IL 60601-6780

2. Article Number *(Copy from service label)*
Z-306-368-108

PS Form 3811, July 1999     Domestic Return Receipt     102595-99-M-1789

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*     B. Date of Delivery

C. Signature
X                                    ☐ Agent
                                     ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*     ☐ Yes

Fold at line over top of envelope to the right of the return address



J. Sheras
1315 W. Fullerton
Elmwood Park, IL.
60707-2150

RETURN RECEIPT
REQUESTED

CERTIFIED
Z 306 368 108

MAIL

Richard F. Wilson & Associates
195 North Marian Drive
Suite 3902
Chicago, Illinois
60601-6788

Inter-Office Communication



## LOYOLA
## UNIVERSITY
## CHICAGO

TO:       Kathy Grevas

FROM:     Karen Lee Williams *Kw*

DATE:     April 3, 1996

Effective June 3, 1996 the Senior Secretary position in
Graduate Medical Education will become a Regular Part-Time
(.6 FTE; 24 hours/week) position.

Benefits for a Part-Time position are listed in the
Employee Handbook, which is attached.  If you have any
questions concerning this position or the benefits,
please contact Sherron Glenn, Human Resources 216-9408.



Inter-Office Communication

**LOYOLA**
**UNIVERSITY**
**CHICAGO**

TO:     Karen Lee Williams
        Administrator
        Graduate Medical Education

FROM:   Kathy Grevas
        Senior Secretary
        Graduate Medical Education

DATE:   April 10, 1996

This memo is written as a follow-up to your memo dated
April 3 (see attached copy), regarding the change in
status of my present full-time position.  I understand
that effective June 3, 1996 my position of Senior
Secretary here in Graduate Medical Education will be
reduced from a 1.0 FTE to that of a regular part-time
permanent, .6 FTE, 24 hours per week/48 hours per pay
period position.

I have read and understand the benefits as outlined for
this reduction in status in the Employee Handbook.  I am
informing you that I will be happy to continue on as a
full-time employee until June 3, then accept the regular
part-time .6 FTE, 24 hours per week status change.  I have
also spoken with Sherron Glenn in Human Resources and have
informed her that I would like to utilize the other two
days (16 hours per week) to work within the temporary
secretarial float pool here at Loyola.  I will follow-up
by contacting Natalie Kaliterna and let her know that as
of June, I am available to work in the float pool.  In
addition, I would like to utilize the In-House Transfer
Policy to seek another full-time position here at Loyola.

cc:  Sherron Glenn, Human Resources
     Natalie Kaliterna, Human Resources
     Patricia Moten Marshall, Healthcare Services

**TO:**        Patricia Moten Marshall
              Healthcare Services

**FROM:**     Kathy Grevas
              Graduate Medical Education

**DATE:**     April 16, 1996

Since our meeting last week, I feel that things have gotten somewhat better as far as communication with Karen. However, I still feel uncomfortable, and I know that once the trust is gone and the damage has been done, it takes a lot of work to make it a workable situation once again... I'm trying. I have now started to put everything in writing to Karen, so that there is no way that she can come back and say that I am not communicating with her or keeping her abreast of things.

Instead of being treated treated as a seasoned, competent professional, I feel as though I am being treated as if I were a no-brain entry level employee. I don't feel as though Karen trusts my ability to do my job or to represent the department. I feel as though Karen is nit-picking and finger-pointing every little error at me. I will accept responsibility for whatever I have done, however, I don't feel as though I should have to accept responsibility for someone else's errors.

Also, I feel as though I am being treated as a child by having to write Karen notes to tell her when I am going to the bathroom, cafeteria, run errands, etc. I have always told Karen where I was going and what I was doing. Karen just never paid attention to me when I spoke with her. It disturbs me to be treated the way I am, and I'm having a little difficulty with that.

At times, it's extremely difficult to put a smile on your face and put your best foot forward when you feel as though someone is gunning for you and your work is going unappreciated or sabotaged, and your hopes to stay on with Loyola are being threatened.

## INTER-OFFICE COMMUNICATION
## LOYOLA UNIVERSITY MEDICAL CENTER

DATE:             June 11, 1996

TO:               Kathy Grevas

FROM:             Patricia Moten Marshall
                  Associate Vice President, Healthcare Services
                  and Hospital Director

SUBJECT:          Concerns Expressed

In view of the many meetings we have had in the past months, I would like to take this opportunity to provide a recap regarding one of your concerns.

On March 11, 1996 you came to me and expressed several concerns regarding the performance of Karen Williams, your supervisor (timecard issues, use of work hours, communication issues). You requested that I keep this discussion confidential. I informed you that in order to investigate the concerns further, I would need to discuss your concerns with Karen, and therefore divulge to her that you had brought these issues to my attention. You asked for an opportunity to think about your decision.

On March 15, 1996 you came to me and stated that you were willing to allow me to investigate your concerns referenced above. I completed the investigation and met with you on March 18, 1996. I communicated that appropriate actions had been taken regarding your concerns and I considered the investigation closed.

However, at that time, you expressed additional concerns. At this time, for the first time, you stated that Karen had sexually harassed you. You identified two occurrences which you felt were sexual harassment. In a memo to me you described these two occurrences as follows: "The incidents with me where Karen exhibited inappropriate and unprofessional behavior...handing me the payroll box making weird noises and saying "that's what happens when I get excited", and the incident with the pizza box where she was standing behind me and grabbed and held onto my waist area."

On March 25, 1996, I met with you again and stated that a charge of sexual harassment was a serious matter, and needed to be investigated. I requested that you document the incidents, so such an investigation could be completed. You shared with me that you had met with Father Al Kirk, who had recommended that you meet with Denise Eaves from the Employee Assistance Program. You stated that you didn't know if you were stretching the situation by calling it "sexual harassment" and wanted to meet with Denise Eaves before responding to my request.

On March 27, 1996, you met with me again. You stated that based on your discussion with Denise Eaves that you were not sure if sexual harassment had taken place. You felt that a lot was going on in your personal life, and that maybe you had misinterpreted Karen's behavior. You stated that you did NOT want to document a charge of sexual harassment.

You stated that you would continue to document occurrences in the office, and if there was any other concern of this nature that you would contact me. You have not interpreted any additional incidents as "sexual harassment".

I am documenting these discussions with you to communicate that based on your subsequent reflection and feedback to me on March 27, 1996 that I brought appropriate closure to an investigation regarding sexual harassment.

# INTER-OFFICE COMMUNICATION
# LOYOLA UNIVERSITY MEDICAL CENTER

DATE:            June 11, 1996

TO:              Kathy Grevas

FROM:            Patricia Moten Marshall
                 Associate Vice President, Healthcare Services
                 and Hospital Director

SUBJECT:         Eligibility for Severance


Last week you contacted Sherron Glenn in Human Resources and inquired whether you could again be considered for a severance package, considering your position was reduced from full time to a part time, 48 hour per pay period, position. This was an option originally offered when you were advised your position's hours were reduced. You refused the option at that time.

Sherron contacted me and we agreed that we would again allow you to consider this option, since you had only moved to the part time position beginning June 3rd, and you wanted to reevaluate your original decision.

In order to bring closure to this option period, I ask that you make your decision by the end of the work day June 17. Please contact Sherron Glenn and communicate your decision.

Please do not hesitate to let me know if you have any questions.

# PERFORMANCE COUNSELING REPORT

The purpose of this form is to record work-improvement plans for employees experiencing work performance issues.

Employee Identification:

Employee Name _CATHRYN GROVAS._          Date: _6/4/96_

Job Title _SENIOR SECRETARY_          Department: _Graduate Medical Education_

A.  **IDENTIFY PERFORMANCE DEFICIENCY**
    Explain specific areas that need improvement.
    All verification of training and recommendation letters need to
    be proofread.

    All new resident information needs to be added to Q & A data base.

B.  **ACTION PLAN TO CORRECT THIS DEFICIENCY**
    Describe plan, indicating employee and supervisor roles.
    Employee proofread all work as described above.

    DATA Entry - 3 half days 6/10, 11, 12/96. Print daily activity.

    Supervisor will monitor the above

C.  **DATE SET FOR REVIEW OF PROGRESS** _____
    **This section is to be completed after the review date.**

D.  **FOLLOW-UP EVALUATION**
    Describe result of the action plan on employee's performance.

    Note Improvement _____

    Note Lack of Improvement _____

E.  **INDICATE NEXT LEVEL OF ACTION TO BE TAKEN**

Signatures:

Supervisor _Karen Lee Williams_          Employee _KATHY GROVAS REFUSED TO
SIGN: I OBSERVED THIS B___
REVIEWED WY KATHY._



**LOYOLA**
**UNIVERSITY**
**MEDICAL CENTER**

2160 South First Avenue
Maywood, Illinois 60153
Telephone: (708) 216-9000

Loyola University Chicago

October 21, 1997

Ms. Kathryn M. Grevas
7315 W. Fullerton
Elmwood Park, IL 60707

Dear Ms. Grevas:

This is in response to your letter to John Kambanis, your subsequent September 27th letter and
phone calls to me. I have conducted a thorough review of your employment file and the manner
in which you have handled your application process. Your file reflects a voluntary resignation
from the Float Pool effective October 7, 1996.

You have been advised by individuals in the Department of Human Resources regarding the
proper employment application process. Notwithstanding being provided that information, you
have presented yourself in person in your former department and have also made numerous
telephone calls to Human Resources and your former department. Based upon my review of your
record and your refusal to follow instructions regarding proper procedures in the employment
process, I must inform you that you will not be considered for employment.

You are requested to immediately cease contacting medical center departments, including Human
Resources, in person and by phone. Your failure to adhere to our request will be viewed as
harassment on your part. Your cooperation will be appreciated.

Sincerely,

Mary C. Denisienko
Executive Director
Human Resources

November 6, 1997

Ms. Mary C. Denisienko
Executive Director, Human Resources
LOYOLA UNIVERSITY MEDICAL CENTER
2160 South First Avenue
Maywood, Illinois 60153

Dear Ms. Denisienko:

I received your letter dated October 21 (see copy attached) via certified mail, and would like to take this opportunity to discuss it's content.

Yes, I did resign from the Float Pool on October 7, 1996. Upon the work force reduction in Graduate Medical Education, I went into the Float Pool with a verbal agreement by Sherron Glenn that I would be considered and/or interviewed for other full-time positions within the institution during my employment in the pool. As instructed by Sherron, I submitted numerous applications to Human Resources and Edie Runion. I received no interviews. While on my last assignment in Anesthesiology, I contacted Natalie Kaliterna and asked her if she had any other assignments lined up for me upon completion of the assignment in Anesthesiology. Natalie informed me that she had none. I also checked with Edie Runion to see if she had any interviews lined up for me and, again, I was told no. Given this, being single and self-supportive in need of benefits, I decided to accept the offer extended to me for a full-time permanent position at Elmhurst Memorial Hospital. My desire was not to leave Loyola.

Yes, I did present myself to my former department once around September. I had been told that Karen Williams was leaving Loyola, and had stopped by with a gift for her to say good-bye and wish her well. I, however, did not get to see her. I was told by Dorothy in Dr. Vertuno's office that Karen had left two weeks prior and that Jean was busy, therefore, I was not able to leave the gift. I stopped by in an attempt to make amends with Karen at Sherron's previous suggestion.

I have also made numerous telephone calls to stress my desire to return to Loyola, not with the intent to harass. During one of these telephone calls, I spoke with Sherron and was taken back by her rude and inappropriate manner. Sherron seemed to be having a very bad day, snapped at me and told me that I should not limit myself to Loyola if I were seeking employment. She then hung up on me. I was shocked by her seemingly cold and inhuman attitude, given her position as Director of Human Resources.

Mary, I do not wish to burn any bridges with Loyola and would like to express my sincerest apologies. I would, however, like to ask that you reconsider my request for employment in the future.

Thank you for taking time from your busy schedule to read my letter. Your reply to this request would be greatly appreciated.

Sincerely,

Kathryn M. Grevas

January 12, 1998

Ms. Mary C. Denisienko
Executive Director, Human Resources
Loyola University Medical Center
2160 South First Avenue, Bldg 201, 4th Floor
Maywood, Illinois 60153

Dear Ms. Denisienko:

This letter is written as a follow-up to my letter to you dated September 6, 1997, and your letter dated October 21, 1997 (see attached copies), and would like to explain further.

As you know, I was employed with Loyola University from December 1993 until my voluntary resignation from the Float Pool effective October 7, 1996. I had been employed in Graduate Medical Education full-time until June of 1996, when my position was reduced to a part-time status working three days a week. Being single and self-supportive and in need of a full-time position with benefits, I opted to take the work force reduction with a verbal agreement from Sherron Glenn that I would be interviewed and considered for other full-time positions with Loyola. While in the Float Pool, I submitted several applications and received no interviews. While on my last assignment in Anesthesiology, Natalie Kaliterna informed me that she had no additional assignments lined up for me. I also checked with Edie Runion, who was the secretarial/clerical recruiter at the time. Once again, Edie informed me that she had no interviews lined up for me. Given this, I accepted a full-time permanent position with benefits at Elmhurst Memorial Hospital.

In your letter of October 21, you stated that I presented myself and made numerous telephone calls to my former department. I wish to inform you that the information you stated is incorrect. Since my departure from Graduate Medical Education, I made only two telephone calls: once around November 1996 to speak with Jean Holewa and Karen Lee Williams to say "hello" and to inform them that I was now working in the Surgical Services Department at Elmhurst Memorial, the second time was quite sometime later after Karen had already left Loyola to ask Jean if she had received my application & resume for re-employment consideration. I did not make any visits to my former department as stated., in fact, I made none after my departure into the Float Pool, except around September 1997 when I stopped by in hopes to say goodbye to Karen and was greeted by Dorothy and informed that Karen had already left Loyola. Dorothy did not allow me to speak with Jean. I believe someone deliberately gave you incorrect information, just as I believe I was sabatoged and set-up for failure because I reported my former supervisor, Karen Lee Williams for inappropriate and unprofessional behavior. I also believe my good name and reputation has been slandered by either Karen Lee Williams, Dorothy Janrosik or Sherron Glenn. I also believe that one or more of these individuals may be attempting to block me from being able to return to Loyola. Perhaps, Sherron does not want to admit that she handled the situation improperly or admit that she was wrong?

As you requested, I will abide by your wishes to stop contacting Human Resources by phone or in person. However, I would like the opportunity to restore my good name, reputation and credibility, which has been greatly damaged and currently at stake. I would also like to request an appointment to come in and meet with you to discuss these issues further. A timely response to this letter is being requested. Thank you.

Sincerely,

Kathy Grevas

① DR RAFAYIAN

(630)-255-615/ PAGER #

② DR. GAAITAS- 386 N. YORK RD
ELMHURST, IL
(630) 834. 1557

How To Survive
The Loss of Love
By MELBA COLGROVE, HAROLD H.
BloomField, Peter McWilliams

GUIDANCE CENTER
(630) 953-2900
INTAKE PERSON
EMH-EZ
SAW REF. EAP

# GUIDANCE CENTER

■

OF

ELMHURST MEMORIAL HOSPITAL
Behavioral Health Services

Z 306 368 108

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
_Richard F. Nelsen + Assoc._

Street & Number
_195 N. Harbor Dr. #3902_

Post Office, State, & ZIP Code
_Chicago, IL 60601-7250_

| | | |
|---|---|---|
| Postage | $ | 0.55 |
| Certified Fee | | 1.40 |
| Special Delivery Fee | | |
| Restricted Delivery Fee | | |
| Return Receipt Showing to Whom & Date Delivered | | 1.25 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | | |
| TOTAL Postage & Fees | $ | 3.20 |

Postmark or Date

PS Form 3800, April 1995

UNIT ID: 0304
CLERK: KVRFFW

_Request
Reinstatement ... Loyola_

SHIPPER'S COPY

☑ PLEASE REPLY  ☐ P⬛SE FILE  ☐ OTHER _____

708193

FROM  Harold J. Tram
Manager
Loyola University EFCU
Maywood IL 60153-3304

**Statement of
Benefits Enclosed**

DATE  May 3, 2002         Enrollment period extended to: June 10, 2002

TO  ***********AUTO** 3-DIGIT 607
Kathryn M. Grevas
7315 W Fullerton Ave.
Elmwood Park IL 60707-2620
lıllıdlıadllladadddllıadllllıdadlııdll

# Extra Member Benefits –
## No Extra Cost*

MESSAGE   An audit of our Accidental Death & Dismemberment Insurance was
recently conducted by the Plan Administrator. Your current
Statement of Benefits is enclosed.

Plan records show that you have no additional coverage beyond
the $1,000 insurance provided to you at no charge by Loyola
University EFCU.

An open enrollment period is underway through June 10, 2002.
During this time, CUNA Mutual Insurance Society has agreed to
permit currently insured Members age 18 and over to add to
their no-cost coverage. Each additional $10,000 of coverage
costs just $1.10 per month!

*Up to →*
*$300,000
additional
protection!*

Members now have an opportunity to add up to $300,000 of
additional protection to their no cost coverage.  And this
serious  protection for serious times includes enhanced
benefits at no extra cost.

If you want to get this coverage and extend it to your
eligible family members, just fill out and mail the enrollment
form on your statement. Premiums will be automatically
deducted from your account every three months. It's that
convenient!

We trust that by strengthening your financial se⬛
this group coverage can give you added peace of⬛
and in the future. For more information regardi⬛
Credit Union Member insurance protection, call⬛
at 1-800-356-6006.

Sincerely,

*Harold J. Tram*

Harold J. Tram
Manager
P.S. Open Enrollment Period Ends June 10, 2002⬛
sure your coverage is in effect by August⬛
your completed enrollment form right away⬛

* See enclosed Notice for details about unique benefi⬛
counseling, available at no cost with additional pr⬛
The insurance offered is not a deposit and is not insu⬛
or guaranteed or underwritten by your credit union.

1161-1906L(0402)FU

☑ PLEASE REPLY    ☐ PLEASE FILE    ☐ OTHER _____

927209

**FROM**  Harold J. Tram
Manager
Loyola University EFCU
Maywood IL 60153-3304

**Statement of
Benefits Enclosed**

**DATE**  April 19, 2002

**TO**  ***********AUTO** 3-DIGIT 607
Kathryn M. Grevas
7315 W Fullerton Ave.
Elmwood Park IL 60707-2620
|ıllıllıılıllllıılıılılılllıılıllllıılıılılııllll

# Extra Member Benefits – No Extra Cost*

**MESSAGE**  An audit of our Accidental Death & Dismemberment Insurance was recently conducted by the Plan Administrator. Your current Statement of Benefits is enclosed.

Plan records show that you have no additional coverage beyond the $1,000 insurance provided to you at no charge by Loyola University EFCU.

An open enrollment period is underway through June 1, 2002. During this time, CUNA Mutual Insurance Society has agreed to permit currently insured Members <u>age 18 and over</u> to add to their coverage. Each additional $10,000 of coverage costs <u>just $1.10 per month</u>!

*Up to → $300,000 additional protection!*

Members now have an opportunity to <u>add up to $300,000</u> of additional protection to their no cost coverage. And this serious protection for serious times includes <u>enhanced benefits at no extra cost.</u>

If you want to get this coverage and <u>extend it to your eligible family members</u>, just fill out and mail the enrollment form on your statement. Premiums will be automatically deducted from your account every three months. It's that convenient!

We trust that by strengthening your financial security, this group coverage can give you added peace of mind today and in the future. For more information regarding this Credit Union Member insurance protection, call toll free at 1-800-356-6006.

Sincerely,

*Harold J. Tram*

Harold J. Tram
Manager

P.S. <u>Open Enrollment Period Ends June 1, 2002</u>. To ma sure your coverage is in effect by August 1, 20 your completed enrollment form right away.

* See enclosed Notice for details about unique benefits, su counseling, available <u>at no cost</u> with additional protecti The insurance offered is not a deposit and is not insured b or guaranteed or underwritten by your credit union.

1161-1906L(0402)

**Loyola University EFCU**
*Important Member Offer*



Kathryn M. Grevas
7315 W Fullerton Ave.
Elmwood Park, IL 60707-2620

Dear Kathryn M. Grevas,

It may have been a long time since you've seriously reviewed your need for life insurance protection. **Many of us carefully grow our savings but ignore our insurance portfolios** only to lose it all when an unexpected death leaves our loved ones reliant upon a single income.

Or maybe you think you already have enough life insurance. **Did you know that many experts recommend a level of coverage that is five to ten times your current salary? \*** This important rule of thumb applies equally to women and men, husbands and wives.

That's why Loyola University EFCU is pleased to make available to Members and spouses a quality term life insurance product underwritten by CUNA Mutual Insurance Society. This insurance plan offers:

- Affordable Member rates up to 30% lower than before
- A discount for non-tobacco users
- *NEW* • Convenient, automatic payment method

- Up to $100,000 of coverage for you
- Up to $100,000 of coverage for your spouse
- *NEW* • Easier to complete application form

Credit Union Members and their spouses between the ages of 18 and 59 are now encouraged to apply for $50,000 up to $100,000 of this level term life insurance which continues to age 70.

And for added security, you (and your spouse) can also take advantage of $25,000 Accidental Death Protection at affordable group rates. This valuable option provides an additional $25,000 in benefits for death from a covered accident.**

One more thing, there's no risk or obligation. After you're accepted and your first premium is paid, you'll have a full 30 days to decide if this coverage is right for you. You may cancel anytime within the 30-day period, and any premium paid will be refunded to you.

We expect response to be heavy for this "Members-only" offer. So, please complete and mail the enclosed application promptly to help us speed processing and give you immediate consideration for coverage. Remember that a well-balanced insurance portfolio is part of a well-rounded financial plan.

Sincerely,

Keith Tlapa
Executive Director, Credit Union Member Services
Licensed Insurance Representative

P.S. Give your insurance portfolio the attention it deserves. Apply for the life insurance you need by August 10, 2001.

---

\* This recommendation represents the sum total of all life insurance policies. Although this policy offers coverage amounts up to $100,000, it can provide an excellent supplement to other policies you hold.

\*\* Accidental Death Protection is not available in Vermont.

1161-1811D(0401)FU

☑ PLEASE REPLY  ☐ PLEASE FILE  ☐ OTHER _____

**FROM**
Harold J. Tram
Manager
Loyola University EFCU
Maywood IL 60153-3304

**Statement of
Benefits Enclosed**

**DATE**
May 4, 2001
Enrollment period extended to: June 10, 2001

**TO**
******AUTO** ALL FOR AADC 606
Kathryn M. Grevas
7315 W Fullerton Ave.
Elmwood Park IL 60707-2620

**MESSAGE**

An audit of our Accidental Death & Dismemberment Insurance was recently conducted by the Plan Administrator. Your current Statement of Benefits is enclosed.

Plan records show that you have no additional coverage beyond the $1,000 insurance provided to you at no charge by Loyola University EFCU.

An open enrollment period is underway through June 10, 2001. During this time, CUNA Mutual Insurance Society has agreed to permit currently insured Members age 18 to 69 to add to their coverage. Each additional $10,000 of coverage costs just $1.10 per month!

If you want to get this coverage and extend it to your eligible family members, just fill out and mail the Additional Protection enrollment form on your statement. Premiums will be automatically deducted from your account every three months. It's that convenient!

We trust that by strengthening your financial security, this group coverage can give you added peace of mind today and in the future. For more information regarding this Credit Union Member insurance protection, call during the week, toll-free at 1-800-356-6006.

Sincerely,

*Harold J. Tram*

Harold J. Tram
Manager

P.S. Open Enrollment Period Ends June 10, 2001. To make sure your coverage is in effect by August 1, 2001, mail your completed enrollment form right away.

1161-1593L1(1000)FU

☑ PLEASE REPLY ☐ PLEASE FILE ☐ OTHER _____

FROM  Harold J. Tram
      Manager                              **Statement of**
      Loyola University EFCU               **Benefits Enclosed**
      Maywood IL 60153-3304

DATE  April 20, 2001

TO    *********AUTO** MIXED AADC 600
      Kathryn M. Grevas
      7315 W Fullerton Ave.
      Elmwood Park IL 60707-2620
      IılIIılIıılıılIIıılıılılıIIıılıılIIılılıılıılII

MESSAGE  An audit of our Accidental Death & Dismemberment Insurance was
         recently conducted by the Plan Administrator. Your current
         Statement of Benefits is enclosed.

         Plan records show that you have no additional coverage beyond
         the $1,000 insurance provided to you at <u>no charge</u> by Loyola
         University EFCU.

         An open enrollment period is underway through June 1, 2001.
         During this time, CUNA Mutual Insurance Society has agreed to
         permit currently insured Members <u>age 18 to 69</u> to add to their
         coverage. Each additional $10,000 of coverage costs <u>just $1.10
         per month</u>!

         If you want to get this coverage and <u>extend it to your
         eligible family members</u>, just fill out and mail the Additional
         Protection enrollment form on your statement. Premiums will be
         automatically deducted from your account every three months.
         It's that convenient!

         We trust that by strengthening your financial security,
         this group coverage can give you added peace of mind today
         and in the future. For more information regarding this
         Credit Union Member insurance protection, call during the
         week, toll-free at 1-800-356-6006.

         Sincerely,

         *Harold J. Tram*

         Harold J. Tram
         Manager

         P.S. <u>Open Enrollment Period Ends June 1, 2001</u>. To make sure
              your coverage is in effect by August 1, 2001, mail your
              completed enrollment form right away.

1161-1593L1(1000)

# HEARING
*not what*
# IT USED TO BE?



More than 25 million Americans have some form of hearing loss. Unfortunately, since the symptoms are so subtle, many don't know they suffer from it. Make sure you're not one of them. Come by one of our hearing discussions for a free screening and to ask a physician any questions you may have. **To set up a free screening, call 888-LUHS-888.**

**ROCK OF AGES BAPTIST CHURCH**
1309 Madison Avenue, Maywood, IL 60153
*Thursday, July 13* ～ noon – 3 p.m.

LOYOLA
UNIVERSITY
HEALTH SYSTEM
Loyola University Chicago

SOUTHWEST SUBURBAN CENTER ON AGING
111 Harris Street, LaGrange, IL 60526
*Thursday, July 27* ～ noon – 3 p.m.



**Loyola University EFCU**

# Lock in your low insurance rate before you turn 46

- Coverage for the rest of your life
- Your first month's premium is just $1
- No medical exams required

Kathryn M. Grevas
7315 W Fullerton Ave
Elmwood Park, IL 60707-2620

Dear Kathryn M. Grevas,

As a member of the Loyola University EFCU, you could now qualify for a Members® Whole Life Plan with low monthly premiums that are valid until you turn 46. The policy from CUNA Mutual Insurance Society is designed to help your family (or anyone you love) when you're not there to provide for them. Here's how it works:

**Get up to $10,000 coverage**
Just choose an amount from the list below. This money can help your loved ones pay for extra costs, like funeral expenses, tuition or bills. Plus, under current tax laws, the cash amount they will receive is income-tax free.

**Enjoy low monthly premiums**
Your rate will not increase as long as you sign up before you turn 46. That's right around the corner!

**You are guaranteed lifetime protection**
Unlike other plans that end at a certain age, your coverage continues for your entire life as long as your premiums are paid. It works in addition to any insurance you currently carry and your benefit amount will never go down.

**Just mail back the form below**
There are no long forms to fill out, no health exams and your coverage CANNOT be cancelled by anyone but you. So why wait? Just mail back the form below to start this valuable coverage. Besides, as you grow older,

1161-8414-D1(1201) *(over please)*

---

# APPLICATION FORM FOR MEMBERS® WHOLE LIFE INSURANCE

**PLEASE PRINT:**

CUNA MUTUAL GROUP
CUNA Mutual Insurance Society

Administrative Office
P.O. Box 391
Waverly, IA 50677-9925

Kathryn M. Grevas
7315 W Fullerton Ave
Elmwood Park, IL 60707-2620

0000 2591 72704  02055762  2QWL01  CU01229178
02012002  MN1000008772946  PCSI

Home Telephone (_____) _____  Work Telephone (_____) _____

Gender: ☐ Male ☐ Female  Age _____  Date of Birth _____
_____ MONTH  DAY  YEAR

I wish to apply for the amount of insurance checked below:
☐ $10,000  ☐ $8,000  ☐ $6,000  ☐ $4,000  ☐ $2,000

Are you a U.S. Citizen? ☐ Yes ☐ No

Beneficiary Name(s) _____  Social Security # _____
FIRST  MIDDLE  LAST  Relationship(s) _____

**PLEASE ANSWER THESE QUESTIONS:**

☐ Yes ☐ No  Has illness or injury caused you to retire, or are you currently unable to work because of injury or illness?

☐ Yes ☐ No  Have you, within the past 5 years, been treated for or diagnosed by a physician as having insulin dependent diabetes, stroke, paralysis, heart condition (except high blood pressure), cancer, kidney failure, lupus, chronic obstructive pulmonary disease (COPD) or emphysema, liver disorder, AIDS or AIDS Related Complex, mental disorder or disorder of the brain or spinal nerves, alcoholism or excessive use of alcohol?

☐ Yes ☐ No  Do you want the automatic premium loan provision?

☐ Yes ☐ No  Will coverage applied for replace, discontinue, or change any life coverage or annuities?

All statements and answers made in this application are full, complete and true to the best of my knowledge and belief. This application will be the basis of any insurance issued. I understand that: (1) benefits may be denied during the first 2 years from the effective date if I fail to give true and complete answers in the application; and (2) no insurance will take effect unless: (a) my application is approved, and a certificate is issued by the company; (b) the full first premium is received by the company within 21 days of the effective date of the certificate and while the applicant(s) is (are) alive; and (c) there has been no change in health or insurability from the date of this application to the effective date of coverage.

DATE SIGNED _____  X _____
SIGNATURE

B10f-029-1297(R2000)  **APPLICATION FORM**  2QWL01

This insurance is not a deposit and is not insured by NCUSIF or guaranteed or underwritten by your credit union.

**Premium Rates***
(Until you turn 46)

**$10,000** coverage
you pay **$20.61** /mo.

**$8,000** coverage
you pay **$16.76** /mo.

**$6,000** coverage
you pay **$12.90** /mo.

**$4,000** coverage
you pay **$9.04** /mo.

**$2,000** coverage
you pay **$5.19** /mo.

* Rates for this coverage differ for males and females. If our assumption regarding your rate is incorrect, your actual rate may be slightly higher or lower than shown here.

**To apply**
1. Choose the amount of desired coverage.
2. Fill out the form, date and sign.**
3. Mail with $1 in the postage paid envelope.

** Additional Beneficiaries: Please include a separate sheet with names, relationships, date and your signature.

*Approval is based upon the information provided in the application.*

1161-8414A1(1201)IA/LA